Kenneth L. TRIMBLE

v.

Paul N. CARLIN, Postmaster General.

Civ. A. No. 85–276.

United States District Court,
E.D. Pennsylvania.

April 8, 1986.

Harvey S. Miller, Lancaster, Pa., for plaintiff.

18 *Del.C.* § 3902(a)(1).

Charles F. Kappler, Asst. Reg. Labor Counsel, U.S. Postal Service, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Plaintiff Kenneth Trimble suffered several injuries in his right knee, most of them while employed as a mail handler at the Lancaster Post Office. As a result of his last injury, sustained while working in June, 1979, as well as the cumulative effects of prior injuries, Trimble is regarded as handicapped, in that he suffers from a physical impairment which substantially limits a major life activity, *viz.*, employment. See, 29 U.S.C. § 706(7)(B). Although Trimble has now returned to work pursuant to an agreement between the Lancaster Post Office and the Department of Labor and received compensation for at least some of the time he was unable to work, he contends that the refusal of the Lancaster Post Office management to assign him "light" duties between December, 1979, and October, 1982, when he returned to work, constitutes a violation of the Rehabilitation Act of 1973, specifically 29 U.S.C. § 794, and implementing regulations found at 29 C.F.R. § 1613.703 and 704. Trimble seeks compensation for lost wages and benefits and attorney's fees.

In 1981, during Trimble's forced lay-off from the Postal Service, he filed, with the Equal Employment Opportunity Commission (EEOC), a charge of employment discrimination based upon his handicap. Thereafter, administrative proceedings were conducted with Trimble losing at each level until he received a hearing before an EEOC attorney examiner on October 12, 1983.

The hearing examiner issued a decision recommending that the Postal Service pay Trimble the difference between his regular wages and the amount he received in compensation between December, 1979, and October, 1982, and compensate him for lost seniority, annual and sick leave benefits during that period. Thereafter, the regional postmaster rejected that recommenda-

tion, resulting in the instant suit, now before the Court on cross-motions for summary judgment pursuant to a stipulation between the parties. The record on summary judgment consists of the entire EEOC file, the transcript of the October, 1983, administrative hearing, and the briefs of counsel, including exhibits.

These documents establish that Trimble had been assigned "light" duties pursuant to a request from his treating physician when he returned to work following an injury to his knee in June, 1979. On prior occasions, after surgery resulting from two separate work-related injuries to the knee, Trimble had returned to regular duties. Although the record is somewhat obscure, it appears that Trimble had a short period of "light" duty status in 1977 related to recurrent problems with his knee. *See,* Hearing Transcript (H.T.) at 36; EEOC Exhibits at 58. (April 14, 1981, letter from John Shertzer, M.D., to Harvey S. Miller, Esquire). Since June, 1979, Trimble has not been able to perform "regular" duties, but, as noted, could perform "light" duties. The "light" duties initially assigned to Trimble in June, 1979, allegedly encroached upon the clerical employees' duties. When the clerk's union filed a grievance, Trimble was removed from duty. In September, 1979, he again returned to work on "light" duty status. In December, he was informed that "light" duty would no longer be available. He then sought workers' compensation which he eventually received. While receiving compensation, he continued, unsuccessfully, to seek reinstatement to "light" duties under the collective bargaining agreement and ultimately filed a discrimination claim. Finally, pursuant to a rehabilitation program of the Office of Workers' Compensation Programs (OWCP) of the Department of Labor, Trimble was assigned "limited" duties within the mail handler craft at the Lancaster Post Office. He returned to work in October, 1982, and is still working, without further injury, on "limited" duty status. There is no dispute as to the permanence of the impairment of Trimble's right knee and his continuing

lack of fitness for unrestricted work as a mail handler.

The defendant's position has somewhat shifted over the lengthy course of this litigation, but can best be summarized as a contention that Trimble is not a "qualified" handicapped person within the meaning of the Rehabilitation Act. In rejecting the hearing officer's decision, Regional Postmaster General Edward Horgan, on behalf of defendant, disagreed with the hearing officer's conclusion that Trimble was qualified to perform the essential functions of a mail handler's position. In disagreeing, defendant first determined that Trimble was incapable of performing a mail handler's duties without modification or reasonable accommodation. Upon that premise, he concluded that Trimble was not qualified for the position he sought; hence was not a "qualified handicapped person" and was, therefore, not entitled to reasonable accommodation under 29 C.F.R. § 1613.704(a). Alternatively, defendant concluded that the Postal Service was correct in its refusal to provide "light" duty assignments because Trimble had been injured five times while performing such "light" duty assignments. (Exhibit B to Plaintiff's Complaint). Upon that conclusion, which finds no support in the record,[1] defendant further concluded that the Postal Service could not provide reasonable accommodation without endangering Trimble's safety.

While defendant still maintains that Trimble is not a "qualified handicapped person" within the meaning of the Rehabilitation Act and its implementing regulations, it has apparently dropped its contention that it cannot make reasonable accommodation for him without endangering his safety. Instead, defendant now argues that reasonable accommodation does not include reassignment, that Trimble's claim

that he should have been allowed to perform "light" duties between December, 1979, and October, 1982, requires an interpretation of the collective bargaining agreement between the Postal Service and Trimble's union, and that Trimble's claim of a right to return to work requires an interpretation of the Federal Employee Compensation Act.

The latter two contentions are directed toward Trimble's implicit contention that since he was performing "light" duties under the collective bargaining agreement until December, 1979, and now performs "limited" duties under the OWCP rehabilitation program, he should have been allowed to continue to work, under the same conditions, during the time he was laid off and receiving compensation. The basis for plaintiff's contention is simply that these "light" duties and the "limited" duties also constitute reasonable accommodations to Trimble's recognized and admitted handicap. It is obvious from the record that, whether what Trimble is now doing is termed "light" or "limited" duties or a reasonable accommodation to his handicap, the work is actually a modification of the normal duties of a mail handler. Trimble is not seeking to assert either contract rights or rights under the Federal Employees Compensation Act because, simply spoken, his rights under the Rehabilitation Act can be vindicated by actions that are, in fact, identical to actions which might be taken under both the contract and the Compensation Act.

■ Defendant's arguments that Trimble is not "qualified" and that he is seeking reassignment as a reasonable accommodation to his handicap rest upon the assumption that the most essential function of a mail handler is the ability to lift at least seventy (70) pounds. It is evident that

---

**1.** The statement in defendant's letter rejecting the hearing officer's recommended decision refers to the affidavit of E. Lynn Ervin, Director of Employee and Labor Relations for the Lancaster Post Office, who also represented the Postal Service at the EEOC hearing. It is obvious from the questions he asked Trimble in that proceeding that Ervin assumed Trimble had been on "light" duty status after each knee injury and that his removal from duty in July and December, 1979, resulted from injuries or other medical problems with his knee. Testimony at the hearing and the records of Trimble's treating physician reveal that none of these assumptions is accurate.

defendant insists that a person is not "qualified" unless he can perform all of the duties of the position in question without any type of modification thereof. While this argument may have merit in some contexts, we conclude that Trimble is asserting a claim for discrimination based upon "surmountable barriers". See, *Prewitt v. U.S. Postal Service*, 662 F.2d 292 (5th Cir.1981). Thus, the Court is obliged to review the duties of a mail handler to determine whether Trimble can perform the essential functions of the position with "reasonable accommodation" to his physical limitations. If so, he is a "qualified handicapped person". 29 C.F.R. § 1613.-702(f).

The mail handler position is described in Exhibit A to Defendant's Motion for Summary Judgment. Although the position does require a test of strength and stamina, and applicants with certain physical conditions must obtain a physician's approval before submitting to it, the description of the position and its qualifications does not specifically exclude those who may not be able to meet the usual strength and stamina requirements. Instead, persons with certain enumerated physical conditions are told that they will be given special instructions when notified to report for the strength test. Trimble, of course, would now fall into this category by reason of his knee injury.[2] It does not appear, and there is no evidence, that a new applicant with Trimble's present restrictions would automatically be precluded from a mail handler's position as long as he is "physically able to perform efficiently the duties of the position".

■ The duties and responsibilities of the mail handler's position as described in Exhibit A fall into six categories. Only a few enumerated duties within the categories, such as unloading mail received by trucks, delivering working mails for delivery to distribution areas, removing filled sacks from racks, picking up and loading filled sacks onto other trucks, appear to require the unrestricted ability to lift. Defendant has not demonstrated that those duties must be performed without equipment or that equipment to assist in those duties is not available. Therefore, the record does not establish that reasonable accommodation to the physical handicap suffered by Trimble is impractical, even if every mail handler must perform every function of the position.

Trimble's description of the duties he performed during the time he was given "light" duties under the collective bargaining agreement and the duties he is now performing under the rubric of "limited" duties, pursuant to the OWCP agreement, supply another obvious means of "reasonable accommodation". During his period of "light" duties in 1979, Trimble was limited to stripping mail from the letter sorting machine and was permitted to take a break every two hours in order to avoid prolonged standing. (H.T. at 16, 17). Presently, Trimble's duties are confined primarily to the "sacking" area where he separates defective sacks from good sacks, hangs empty sacks on racks and cleans empty equipment. (H.T. at 23). All of these duties fall within the restrictions imposed by Trimble's handicap but are also mail handler's duties according to defendant's Exhibit A.

Defendant's argument that Trimble is actually seeking a different position as a means of reasonable accommodation because his handicap constitutes an "insurmountable" barrier to his employment as a mail handler is without support in the record. Defendant never considered whether it could make a reasonable accommodation to Trimble's handicap which would enable him to fulfill the lifting functions of a mail handler's position. Moreover, there are many other essential functions of that position which Trimble can perform with little or no modification of the required duties.

Therefore, we conclude that the Rehabilitation Act provides a separate and distinct

**2.** Trimble had no physical disability when he was originally hired by the Postal Service in 1969. He took and passed the strength and stamina test with no restrictions.

basis for his claim that he was unlawfully deprived of employment during the period December, 1979, to October, 1982. Trimble was then, and remains, a "qualified handicapped person" who can, with reasonable accommodation, perform the essential duties of the mail handler position with the Postal Service. Consequently, he is entitled to be compensated for loss of wages and benefits during the time he was unlawfully deprived of his position.